*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL WIEGERT,

      Plaintiff-Appellant,

v

BLUE CROSS BLUE SHIELD OF MICHIGAN,

      Defendant-Appellee.

UNPUBLISHED
October 15, 2020

No. 348931
Wayne Circuit Court
LC No. 18-001952-CD

Before: GADOLA, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition to defendant. We affirm.

## I. BACKGROUND

In 2015, plaintiff interviewed with defendant for a position in defendant's Human Performance Department. Defendant's employees, Valarie Keesee and Steven Weingarden, conducted plaintiff's interview. In plaintiff's words, the "interview was not [his] best." Five minutes into the interview, plaintiff got nervous that Keesee and Weingarden were not pleased with how the interview was going, so he interrupted the interview to inform Keesee and Weingarden that he had a military-service-related disability that caused him to have a flat affect and lack of outward emotion, but he wanted them to know he was happy to be there. Keesee and Weingarden said "okay" and the interview continued. Two other candidates interviewed for the same position as plaintiff, and Keesee and Weingarden rated the three candidates. Plaintiff received the lowest rating from both interviewers. Keesee had the ultimate choice of which candidate to hire, and she decided to not offer plaintiff the internship.

A few weeks later, Weingarden offered to give plaintiff feedback on his interview, and plaintiff accepted. According to plaintiff, during the ensuing telephone call, Weingarden told plaintiff that he was "an emotionless, monotone, like battle-scarred, shell-shocked veteran"; that Weingarden " had to work with someone just like [plaintiff] in grad school" and it "wasn't good"; "You know, it's part of being in the military, and it happens"; and, "There's no way that you're going to be able to ever work like in the applied world, which includes every corporation, every

-1-

consulting firm, every job possibility . . . [s]o your best bet would just be to go to some no-name college in the middle of nowhere and just rot for the rest of your life."[1]

In February 2018, plaintiff filed a complaint alleging that defendant violated the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1202 *et seq*. Plaintiff alleged that he informed Keesee and Weingarden of his disability during his interview and that he was not offered the internship because of his disability. In January 2019, defendant moved for summary disposition arguing that plaintiff failed to raise a genuine issue of material fact whether plaintiff was not offered the internship because of his disability. Defendant also argued that plaintiff failed to prove that defendant's nondiscriminatory reason for hiring a different candidate was false or a pretext for discrimination. After a hearing on the motion, the trial court held that plaintiff failed to demonstrate that Weingarden's alleged statements were related to defendant's hiring decision or that plaintiff would have been offered the internship but for his disability.

This appeal followed.

## II. STANDARD OF REVIEW

"This Court generally reviews de novo a trial court's ruling on summary disposition motions." *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim" and "may only be granted when there is no genuine issue of material fact." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (citation and quotation marks omitted). In making a decision on a motion for summary disposition under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*.

## III. ANALYSIS

Plaintiff argues that Weingarden's statements during the feedback session with plaintiff, viewed in the light most favorable to plaintiff, were direct evidence that plaintiff's disability was a motivating factor in defendant's decision to not hire plaintiff, and that the trial court erred by holding otherwise. We disagree.

Plaintiff claims that defendant decided not to hire him because of his disability in violation of the PWDCRA. MCL 37.1202(1)(a)-(e) of the PWDCRA prohibits an "employer" "from taking any number of adverse employment actions against an individual because of a disability . . . that is unrelated [or not directly related] to the individual's ability to perform the duty or a particular job or position." *Peden v Detroit*, 470 Mich 195, 203-204; 680 NW2d 857 (2004) (quotation marks omitted; alteration in original). "To prove a discrimination claim under the [PWDCRA],

---

[1] Weingarden and defendant adamantly deny that Weingarden ever made these statements, but for purposes of this opinion, we accept as true that Weingarden made the statements. The alleged statements, if made, would be unquestionably offensive and have no place in civil society. This Court disavows and highly disapproves of any such alleged statements.

the plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Chmielewski v Xermac, Inc*, 457 Mich 593, 602; 580 NW2d 817 (1998).

In its motion for summary disposition, defendant did not challenge whether plaintiff has a disability within the meaning of the PWDCRA, whether plaintiff's disability was unrelated to his ability to perform the duties of the internship, or whether defendant's decision not to hire plaintiff, if based on his disability, was one of the forms of discrimination delineated in the PWDCRA. Rather, defendant argued that it did not discriminate against plaintiff. More specifically, defendant argued, and the trial court agreed, that the evidence was insufficient to establish that plaintiff was not offered the internship because of his disability.

"Proof of discriminatory treatment in violation of the [PWDCRA] may be established by direct evidence or by indirect or circumstantial evidence." *Sniecinski v Blue Cross and Blue Shield*, 469 Mich 124, 132; 666 NW2d 186 (2003). In cases involving indirect or circumstantial evidence, a plaintiff must proceed by using the burden-shifting approach set forth in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973)." *Sniecinski*, 469 Mich at 133-134. But "[t]he shifting burdens of proof described in *McDonnell Douglas* are not applicable if a plaintiff can cite direct evidence of unlawful discrimination." *DeBrow v Century 21 Great Lakes, Inc*, 463 Mich 534, 539; 620 NW2d 836 (2001). Direct evidence of discrimination is "evidence that proves impermissible discriminatory bias without additional inference or presumption." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 608 n 34; 886 NW2d 135 (2016). If the plaintiff has direct evidence that his disability was at least *a motivating factor* in the employer's adverse employment decision, then "the case should proceed as an ordinary civil matter." *DeBrow*, 463 Mich at 539-540. In *Hecht*, 499 Mich 586 at 608 n 34, our Supreme Court explained that the "hallmarks" of a case involving direct evidence of discrimination as a motivating factor for an adverse employment action are "a statement made by a decision-maker, to the plaintiff, at the meeting in which the plaintiff suffered the adverse employment decision, and evincing a causal nexus."

The *Hecht* Court cited *DeBrow* for its "hallmarks" of direct evidence of discrimination. On appeal, plaintiff relies extensively on *DeBrow* and contends that Weingarden's statements were similar to the employer's statements in *DeBrow* and therefore were "direct evidence that a motivating factor in [plaintiff's] rejection from the position for which he applied was his disability." Weingarden's statements, however, differed from the employer's statements in *DeBrow* in several key respects. While it is true that, when viewed in the light most favorable to plaintiff, Weingarden's statements were evidence of discriminatory animus, direct evidence of discrimination requires proof that discriminatory animus was *a motivating factor* for the defendant's adverse employment action. See *Sniecinski*, 469 Mich at 136 (noting that even if the plaintiff presented "direct evidence of a discriminatory animus," her claim still failed because she could not prove that the discriminatory animus was "causally related to [the defendant's] failure to hire her"). Weingarden's statements, even when viewed in the light most favorable to plaintiff, are simply not direct evidence that discriminatory animus could have been a motivating factor for defendant's adverse employment action. Keesee, not Weingarden, was responsible for deciding whether to hire plaintiff, so unlike in *DeBrow*, there was no evidence of discriminatory animus by a decision-maker. Compare *DeBrow*, 463 Mich at 539. Weingarden's statements were made

weeks after defendant decided to not hire plaintiff, not at the time that plaintiff suffered the adverse employment action. Compare *id*. And Weingarden's statements did not evince a causal nexus between discriminatory animus and the adverse employment action, particularly because it was Keesee who decided to not hire plaintiff. Compare *id*. Thus, Weingarden's statements bear none of the "hallmarks" of a case involving direct evidence of discrimination. See *Hecht*, 499 Mich 586 at 608 n 34.

Moreover, Weingarden's statements do not fit the general definition of direct evidence of discrimination stated in *Hecht*. To conclude that Weingarden's alleged discriminatory animus was a motivating factor to not hire plaintiff, a factfinder would have to assume (1) that Weingarden held this bias weeks before, (2) that Weingarden informed Keesee of his bias before Keesee made her decision, and, most significantly, (3) that Weingarden's bias affected Keesee's hiring decision. The need for these assumptions to conclude that discriminatory animus was a motivating factor in defendant's decision to not hire plaintiff undercuts plaintiff's contention that Weingarden's statements are direct evidence of discrimination. See *id*. ("Perhaps the best *general* definition of direct evidence is that it is evidence that proves impermissible discriminatory bias *without additional inference or presumption*.") (Some emphasis added.) In sum, plaintiff's evidence bears none of the "hallmarks" of a case involving direct evidence of discrimination, and is otherwise not direct evidence of discrimination being a motivating factor for defendant's adverse employment action because additional inferences are necessary to arrive at that conclusion.

Plaintiff does not contest that, if there was no direct evidence of discrimination, the trial court's decision was proper based on defendant's evidence that it hired the candidate who received the highest rating from defendant's interviews and that plaintiff received the lowest rating from his interview with defendant. We therefore conclude that the trial court did not err in granting summary disposition to defendant.

Affirmed.


/s/ Michael F. Gadola
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien